We will take a break after the next case, which is McGinty v. Procter & Gamble Company. Is that okay? Or will my colleagues prefer to take the break now? I thought after McGinty made sense. Okay. Thank you. George Grenade, EPPA Plaintiff and the Punitive Class Good morning. May it please the Court, George Grenade from Brice, LLP. I'm the EPPA Plaintiff and the Punitive Class. This is an appeal from a dismissal of a consumer protection class action regarding shampoo and conditioner products produced by the Procter & Gamble Company. It's a pretty simple claim. The dismissal is on Rule 12b-6, on plausibility grounds. The Court essentially didn't believe plaintiff's allegations, even though the complaint is, in fact, chock-full of facts that show that the labeling of these products is deceptive. I've got a couple of, maybe three, basic points that I'd like to go over today. The first one is plausibility. I'd like to talk about why the claim is, in fact, plausible. The second is related to the consumer survey that plaintiff submitted and which the district court improperly ignored. And the third, which I'll only go over briefly, is about the district court's improper reliance on the back label of the product to determine whether the plaintiff had stated a claim. The front label of the product was deceptive. Therefore, the district court can't rely on the back of the label to correct the deceptive representation. And that's under long-established precedence at this court, including Williams v. Grover Products Company. As to the plausibility point, American consumers value natural products, including food products and natural personal care products like the products at issue in this case. The natural market is booming. It's an enormous and extremely valuable market. Procter & Gamble Company has attempted to profit off of this market, has profited off of this market, by introducing into the market Nature Fusion Pantene Pro-V shampoos and conditioners. Despite being labeled as Nature Fusion, these products are chock-full of synthetic ingredients, which are revealed on the back of the packaging. Go ahead. There's no claim on the front label. It doesn't say it's natural or 100% natural or anything like that. I'm wondering why it's anything more than ambiguous, which we've said can be dispelled by the back label. Well, we would disagree with that. The front label says Nature Fusion, which is... Does it make a claim about the ingredients, or does it say it's all natural? I mean, the words nature and fusion are suggestive, but they don't actually make any claim, like in Williams and the Grover case, where it said... This and all that. Well, respectfully, we believe that the court should view the claim from the vantage point of the consumer that's actually in the store. We cited a case from the California Court of Appeal called Salazar v. Target that said that what actually matters, and under these California consumer protection statutes, is how consumers actually behave. But why is it ambiguous? I mean, that was my concern. I mean, even in Morphe Traders Joe's, we said 100% New Zealand Manuka honey, which seems like a claim. We said that was ambiguous. Well, that raises a couple of issues. First of all, I would like to finish the point about the word nature fusion. The average consumer in the store doesn't parse the difference between the word nature and the word natural. They're not bringing out a dictionary and looking at exactly what the word nature means. Somehow the word nature means something slightly different. These are natural products consumers. They're looking for natural products. When they see nature fusion, that's a cue to them that this is the type of product that they're looking for. There's also an avocado on the front of the packaging. They also use green. They emphasize the green color, again, to emphasize the naturalness of the product. Well, the nature fusion is at least ambiguous, no? I mean, it suggests that it's nature and something else and doesn't tell you anything about percentages, right? It doesn't tell you anything about percentages. I would respectfully submit that whether the label is ambiguous is not the right question under California Consumer Protection Law. It's not the right question under Williams v. Gerber or Moore v. Mars Pet Care or Salazar v. Target. The right question is— The Mars case does say that qualifiers in packaging, usually on the back of a label, can ameliorate any tendency of the label to mislead. If it conflicts with, rather than confirms a front-labor claim, then the claim is not defeated. So, I mean, that does seem to be a version of the ambiguity rule, no? And conversely, at Ebner, we held that a reasonable consumer would not be misled about the amount of lip balm in a tube because it was undisputed that the label disclosed the correct weight of the included lip product. So, although this Court hasn't directly said that if there's ambiguity in the front label, you can look at the back label, but that seems to be what the Mars case is saying, no? No, Your Honor. There was a misrepresentation on the front label in the Mars case, saying it was a prescription diet product, and the Court found that the plaintiff said at least plausibly alleged that there was a misrepresentation. By contrast, in the Ebner case, the Court found that the plaintiff had not plausibly alleged a misrepresentation. Right, but in explaining itself, it said that qualifiers in packaging can ameliorate any tendency of the label to mislead. So, why isn't that the same thing as saying if you could read it one way, that would mislead? You can look at the back and anticipate that. That's true if there's not a misrepresentation on the front of the label. If there is a misrepresentation, the manufacturer is not allowed to correct that misrepresentation using the back of the label. That's a bait and switch. Counsel, if I could get your perspective on a question of interest to me, I'd appreciate it. So, let's say I'm a consumer, normally a reasonable consumer, but maybe not always. And I'm in a store, and I see a product that says Nature Fusion. Why would I think that product had all natural ingredients? Because I don't know what's being used. All right, there are two parts to the response to that. One is that it uses the word nature on the front of the label so that it emphasizes the naturalness of the product. And two, to keep it tied to our claims, our claims are not only that consumers think the product is 100% natural. There's a second aspect to the claim where we allege that. And our consumer survey shows that consumers think that the product is more natural than synthetic. We have consumer survey results of independent survey, 400 consumers, that shows that over 70% of viewers of the label of the shampoo and of the conditioner think that there are more natural products in each of these than, I'm sorry to miss, but there are more natural ingredients in each of these than synthetic. Did they have access to the product and saw the back label, or they just saw the front label? The survey was attached to the pleading, and that's the whole survey. They just saw the front label. So can you address the Morvey Trader Joe's? So we said the language on the front label, 100% New Zealand Manuka honey. To be understood, that's 100% Manuka honey. And because it could be read in different ways, which I would characterize as being ambiguous, it could be clarified by the back label. Why doesn't that control this situation? I can't address that, Your Honor. The reason it doesn't—oh, I'm sorry, I missed the last part. I said where Nature Fusion isn't a specific claim the way 100% New Zealand Manuka honey is. Right. The results in Morvey versus Trader Joe's came about because of a key fact, and that is that bees can't be controlled. Manufacturers can control what they do, what they put in the product, what they don't put in the product, and then what they represent about that. In the case of Manuka honey, you can't force a bee to only go to Manuka flowers. They might go to other types of flowers or other types of plants. And so, therefore, the reasonable consumer would understand that a beekeeper can't control where the bees go. In our case, the manufacturer controls everything that goes into these shampoos and conditioners. And that's really the heart of the Trader Joe's ruling, or it's certainly a substantial part of it, is this issue with the bees and the fact that they couldn't be controlled. No one would actually think that it's 100% Manuka honey from no other source. Council, the problem I'm having, and I'd like you to address is, it seems like the word nature might be ambiguous as to whether nature is equated with natural, which is what you said. And the second point is that the word fusion seems ambiguous to me, if it doesn't say what's being fused. And so, if nature is ambiguous and fusion is ambiguous, why isn't the whole label ambiguous? Respectfully, my first point on that is that the ambiguity rule is not the right rule. That's not the law under Williams v. Gerber. In the Seventh Circuit, in Bell v. Publix, very well spelled out why the ambiguity rule is not the right rule. Mantegas v. Kellogg is similar. In these cases, they acknowledge that there's an issue of plausible deniability, that a manufacturer can make a statement and it will be deceptive to a reasonable consumer, the ordinary person in the supermarket, but then they can plausibly say, well, actually, there's a second meaning and this is the only one that counts for purposes of the pleading stage at Rule 12b-6. And we respectfully submit that that's not the right, that shouldn't be the law, that isn't the law under Williams v. Gerber. In the diet pepper case, what we did, we said, you could understand diet to mean reduced calories, or you could understand diet to mean weight loss, and since reasonably you could have more than one interpretation, you have to look at the back label, or the back label can dispel any misleading. As I understand the Becerra case, what the court held was that the prevailing understanding of the word diet is not about weight loss. And that's partly due to the nature of weight loss. The things that lead to weight loss are multifaceted. A diet drink, no reasonable person would think that only drinking a diet drink and not changing any other aspect of behavior could possibly lead to weight loss. And the real ruling there is that diet doesn't mean you will necessarily lose weight just by drinking this product. So you want to talk about the survey. Would you do that, please? Yes. As I mentioned before, it's an independent survey of 400 consumers commissioned by Plaintiff's Counsel. There are numerous questions that are laid out both in the briefing and attached to the complaint. But the core point there is that over 70% of consumers of the shampoo and of the conditioner understood that there were more, or believed, rather falsely, that there were more natural ingredients in these products than there are synthetics. Now, does your complaint allege that there were fewer natural ingredients than synthetic ingredients? Defendant wants to shoehorn our claim into one— No, no. I'm asking—I asked you a specific question. Would you answer it? Does your complaint allege that there were fewer natural products than synthetic products in the product? Well— In other words, for the survey's belief to be wrong, it has to be comparative, right? Right. We allege numerous synthetic—these products are— I don't know that we put a number on it, but I believe that there are more synthetics than— I don't mean the number of products. I mean, that wouldn't matter. I would assume if somebody says there's more, they mean percentage of the entire product, not the number of ingredients, right? So if you had, you know, 10 non-natural ingredients and they only amounted to 0.2% of the product, that wouldn't count. So I'm asking you whether the complaint alleges that most of the product is made up of non-natural ingredients, not the number of ingredients. I believe it is—I'm not sure that we say it specifically that way, but I believe that that is nevertheless true. There's a—paragraph 22 of the complaint, for example, long list of synthetic ingredients in these products. I don't recall if we say specifically that there is more— there are more synthetics than natural ingredients. There's only a minimal amount of natural ingredients in these products. The avocado oil, I think, is one of the main ones. But I gather that some of these things— I'm looking at ingredient labels recently just to get some sense of it, and I gather that some of the things that one might call natural are kind of written down in chemical name terms, but they might in fact be perfectly natural. So I can't tell. I mean, I just can't tell. Well, our allegations do discuss— Fragrance, for example. Fragrance could be some rose petals. I don't know what it is. Right. Well, typically in these products, and as we've alleged, the fragrance is synthetic. Okay. I'm just saying you can't tell from the list. That's all I'm saying. Well, we name them as specifically being not natural and being synthetic. And then we also discuss the Natural Products Association standards for what constitutes a synthetic ingredient, and they know that fragrances are typically synthetic. I know my time is over. Okay. Thank you very much. We'll give you one minute of rebuttal. Yes, please. Good morning, Your Honor. May it please the Court. My name is Ann Voights, and I represent Apelli, the Procter & Gamble Company. This Court should affirm the District Court's dismissal of defendant's amended complaint. The problem for plaintiff here is that he's stuck with what the label says and with what the law says, and his own concession here that the term nature fusion doesn't actually say anything about the composition or proportionality of the ingredients. Well, it's certainly meant to convey some kind of a mood or notion that there is something non-synthetic about this product or non-chemical or something. I mean, why use the term? And the avocado or the leaf and the green and all that, particularly when there are other Pantene products that don't say this. There are. But this is a product that does, in fact, include avocado. The picture of the avocado on the front is, in fact, an accurate representation. And the word nature fusion is different from the sort of affirmative representations that this Court has looked at in Gerber, where, for example, they had pictures of fruits on the front that were not, in fact, actually in the product itself or representations that something that is 100% natural. And indeed, even when there have been representations about products being 100% of something, as in the Trader Joe versus Moore case... In that case, to be frank, makes no sense to me. I know it's our case, but it says 100%, 100%, 100%. I don't get it. It is, but this case, I think, falls squarely within other cases as well, including Becerra. If you look at Becerra, Becerra looked at the word diet and said, well, diet could mean two things. It can be, depending on whether you use it as a verb, it can mean to lose weight, or it can mean diet as a noun or an adjective. But what about the survey? I mean, they asked 400 people what they thought it meant. I mean, it seems to me that that may be enough to get them passed a motion to dismiss. I mean, you say no reasonable person would think this, and we know that 70% of the people did think this. Well, first, I think Becerra says that you can't shift a prevailing understanding about reasonableness. A survey can't make something that is implausible plausible. So we don't think you'd get to that. What do you mean by that? I mean, if you say no reasonable person could think this and all of the 400 people who believed this were not reasonable, why wouldn't you think that? First off, if you look at the answers that were actually given, 69% said the product contains both. But I thought they said it contained more of one than the other. There's also answers as to whether they contain more, but you have a plaintiff who conceded here that Nature Fusion doesn't represent anything about the proportionality of the ingredients. And, indeed, the crux of his claim, and I'd refer the court to ER25, is that the Procter & Gamble company had made false representations on the product packaging and in marketing that the products are natural when they, in fact, contain synthetic and are highly processed ingredients, which are not natural. The crux of their claims were always that for this to be natural, it could not have any artificial or synthetic ingredients. But even if this court were going to look at that, we think... They could amend the complaint then. So let's presume that their claim is that it has a majority. This is why I was asking them, do they actually allege that it isn't a majority, which I don't know. I'm not sure they do. Well, Your Honor, I don't think that they can amend it because given what they've said, that Nature Fusion doesn't include any statement about whether it's exclusively or mostly natural, we think that means that even an argument that it can't succeed in light of that concession. We also think if you look at the survey itself, it's also flawed for the reasons that Judge Ikuda brought up. It doesn't have the back label on it. And as this court has consistently said... Wait, just back up a minute. Even though we know that when they ask people, 70% said something like that, that it's mostly natural products. They can't allege that that's what it means. Yes, because the survey itself doesn't even allow for the possibility that the reader thinks the label says nothing at all. As plaintiff's counsel just said, that Nature Fusion doesn't mean anything about the relative proportion of artificial ingredients to natural ones. And so that's why Becerra says you can't take something that is not itself deceptive and use a survey to salvage an otherwise failed claim. And that's the fundamental problem here. Counsel, let me ask you a question. Would you please tell me how your client believes that the words Nature Fusion on the front label should be read or interpreted by a reasonable consumer? I think a reasonable consumer would focus on the word fusion, which is a mixture or an amalgamation, as plaintiff has acknowledged previously, and thinks that this is a combination of both. Because they look and they see a label that has a vitamin on the front of it, splashing into shampoo. It sees a picture of an avocado, which is an ingredient. So if the avocado oil were 0.001%, as it probably is, I'm just guessing, but we don't know that, then a reasonable consumer would think that encompasses the Nature Fusion. The question is whether the reasonable consumer would look at this and think that this was entirely 100% natural. And the answer is that it would not. But that's switching gears from the way... You're saying that that's what the complaint alleged, and that's therefore what our benchmark has to be. They're now saying that's not what the complaint... Did the complaint not allege the other as well? So the complaint, the crux of what it said was that he would not have bought this product had he known that it contained any synthetic ingredients. He's never asked for a leave to amend. He didn't ask for it when a motion to dismiss was filed against the amended complaint. He didn't ask for it in his opening brief or in his reply. No, I do not. I think if you listen to what plaintiff's counsel just said, when he said that Nature Fusion does not by itself say anything about how much of a particular ingredient is in the product, that, we think, is the end of the inquiry. But even if this court thought it were ambiguous, then, as this court's case law also teaches us with Trader Joe and with other cases, you can look to the back of the label to confirm what is in it. This is not a case where we're talking about an affirmative misrepresentation. There, the law is very clear. You cannot look to a back label to correct a falsehood on the front. But that is not what we have here. At most, what we have here is an ambiguity, and the cases are consistent in saying that where there is no affirmative misrepresentation, you can look at the back to confirm. The Ninth Circuit cases don't... I mean, I read from the Morris case, which appears to say that, but I didn't say it too clearly. What Ninth Circuit cases are you relying on? Both Morris and also Moore v. Trader Joe. Because Moore v. Trader Joe also looked at the entire label. And that's consistent with the way that we... that even Gerber says you consider context. You look at... if you look at time... the Freeman v. Time case, that, again, reminded us that what you were looking at, the crux of what we're looking at, is the label. And you look at context, and you read it appropriately. And what plaintiffs would like to do here is to read out the parts they don't like and read in the parts that would support their claim. To go back to the question of what's a complaint alleged, it says the products purchased by a plaintiff and the proposed class are deceptive and misleading because the products contain and are substantially comprised of non-natural ingredients. That's not an allegation that it was 100% contained. It was that it was nationally comprised. So I would refer the Court to 2 ER 13. At the beginning, it says... this is paragraph 4. Defendant represents that the products are natural when, in fact, they contain non-natural and synthetic ingredients, harsh and potentially harmful ingredients, and are substantially unnatural. It means that... But then he goes to say... It means that the product does not contain synthetic ingredients when, in fact, that was not true. The same survey revealed the near majority believe the phrase nature fusion means the product contains only natural ingredients. And looking again at the way they formulated it in the first cause of action, they frame it as that the products are natural when, in fact, they contain synthetic and or highly processed ingredients. But even if this were to be reframed as a challenge to the proportionality, nothing about the word nature fusion, nothing about the front of that label makes any affirmative representation about what ingredients or what proportion of ingredients are in it and whether they are natural or synthetic. If I could address one further question, I'm certainly happy to answer, of course. When we're looking at this language, we think this falls squarely within this court's case law, not just Moore but also Becerra, Time v. Freeman, and that this court has to look to the label itself. And we think that, given Plano's concession here, that the word nature fusion doesn't tell you anything about what's actually in it. We think that that is the end of the inquiry here. The district court appropriately concluded that this was not a case that should go forward. It dismissed without leave to amend, and we would submit that this court should affirm. If there are no further questions, I'm certainly happy to submit. Yeah, I have no questions. Mr. Koda? Okay, thank you very much. Thank you very much. Thank you. Thank you, Your Honors. I just want to briefly address the meaning of the word fusion. May I ask a question? Oh, certainly. What is the Becerra case that she's referring to that she says that the survey doesn't matter, essentially? Respectfully, I think that's a misreading of Becerra. In Becerra, the question was what the meaning of the word diet on various soft drinks meant. The court reviewed dictionary definitions and, well, common sense, and determined that diet didn't mean that drinking the product would lead to losing weight necessarily. There were allegations about a consumer survey, but the court pointed out that those allegations were not clear. It wasn't clear what was in the survey. As best as they could tell, the survey didn't address the issue at hand, which is the meaning of the word diet. Is the survey in this case in the record? The survey is attached to the amended complaint in this case, the entirety of it. Go ahead. Actually, that's a... I've reached the end of my time, so I'll just end by saying that the survey should make clear... The court should credit the survey under Twombly and Iqbal, and the survey makes clear what consumers understand these representations to mean. Thank you. Thank you very much. The case of McGinty v. Proctor & Gamble is submitted, and we will take a 10-minute break. All rise.
judges: GOULD, BERZON, IKUTA